IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVNIA

| | | |
|---|---|---|
| CHARLES KAPISH, individually and t/d/b/a KAPS CONSTRUCTION, | : | No. 3:15cv278 |
| Plaintiff | : | (Judge Munley) |
| v. | : | |
| ADVANCED CODE GROUP, JEFFREY REMAS, and SHAWN BOLLES, | : | |
| Defendants | : | |

## **MEMORANDUM**

Plaintiff Charles Kapish, individually and trading and doing business as Kaps Construction (hereinafter "plaintiff"), asserts federal constitutional rights claims arising from his construction of a new home located in Pittston Township, Pennsylvania. Plaintiff asserts that Defendants, Advanced Code Group, Jeffrey Remas, and Shawn Bolles (hereinafter collectively referred to as "defendants"), acting as building code inspectors on Pittston Township's behalf, applied unfair and unequal interpretations of the local building code, causing delays and additional expenses to the completion of the new home.

Before the court for disposition is defendants' motion for summary judgment regarding Count I of the plaintiff's complaint, filed pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. The parties have briefed their respective positions and the instant motion is ripe for disposition.

**Background**[1]

In 2011, Eric and Kristin Endres[2] contracted with Sennett Enterprises (hereinafter "Sennett") to construct a home in Pittston Township, Pennsylvania (hereinafter "the Endres home"). (Doc. 1, Compl. ¶ 16). As the original contractor, Sennett drafted plan drawings, blueprints and specifications for the Endres home. (Id.) Defendant Advanced Code Group reviewed Sennett's plans and issued the necessary building permits. (Id. ¶ 17).

Subsequent to Sennett securing the building permits, Eric and Kristin Endres ended their business relationship with Sennett and engaged plaintiff to construct their new home for $311,375.00, exclusive of any add-on change orders. (Id. ¶¶ 15, 18). In constructing the Enders home, plaintiff used Sennett's plans and building permits. (Id. ¶¶ 15-18, 20).

On November 12, 2012, Defendant Bolles performed a framing inspection at the Endres home. (Id. ¶ 22). Bolles determined that the Endres home had inadequate frames, and he directed plaintiff to submit engineering plans for the frames. (Id.) Bolles, however, did not issue a stop work order. (Id.) Because Bolles never issued a stop work order, plaintiff continued to rough-in electrical and plumbing. (Id.)

---

[1] For this brief background section, we will cite to plaintiff's complaint. Where appropriate in the discussion section we will cite to record evidence.
[2] Eric and Kristen Endres are not parties to this litigation.

On December 19, 2012, defendants informed plaintiff for the first time that they had shut down construction of the Endres home in November 2012, following the failed framing inspection. (Id. ¶ 26). In response, plaintiff contacted Terry Best, Pittston Township Code Enforcement and Zoning Officer, and requested a hearing before the Pittston Township zoning board. (Id. ¶ 27). Plaintiff requested the zoning board review defendants' subjective interpretations of the local building code, which had caused a complete shutdown of all work on the Endres home. (Id.) A week later, Terry Best advised plaintiff that the local zoning board did not have the authority to override defendants' inspections and stop work order. (Id. ¶ 28).

On January 14, 2013, plaintiff traveled to the Pittston zoning office and spoke in-person with Terry Best. (Id. ¶ 29). While meeting with plaintiff, Best telephoned defendants and requested specific steps plaintiff must take to continue and complete the Endres home. (Id.) Defendants instructed plaintiff to correct the following four (4) deficiencies: "(a) Steel beam to wood (drawing variation); (b) Dimensional lumber to engineered lumber; (c) Roof system framed L side front, made hip valleys & was not on plans, point loads not supported; and (d) Calculations needed . . . minimal specs needed to see if designed . . . if engineer say [sic] it will work & sign off on it." (Id. ¶ 30).

Shortly thereafter, plaintiff hired CECO Associates, Inc., to perform engineering services and inspections of the Endres home regarding defendants' four (4) deficiencies. (Id. ¶ 31). On January 24, 2013, CECO issued a detailed report stating that the structural framing members of the Endres home, including the timber for the first floor joists, first floor joists themselves and the LVL joists, are adequate and "this construction appears to follow industry standards." (Id. ¶ 32). Defendants, however, did not sign off on CECO's report. (Id. ¶¶ 33-34).

Plaintiff alleges defendants spent the next ten (10) months "fabricating" additional issues through the use of "unfair and unequal subjective interpretations of the [local] building code" causing plaintiff to incur additional expenditures and delays. (Id. ¶¶ 34-37). Plaintiff further asserts that during this ten (10) month period, defendants treated other contractors performing work with Pittston Township more favorably. (Id. ¶ 38). Specifically, defendants allegedly failed to hold other contractors to the same subjective zoning standards defendants applied to plaintiff. (Id.) Eventually plaintiff hired a second engineer, David W. Johns, P.E. (hereinafter referred to as "Johns"), who prepared an extensive report dated November 1, 2017. (Docs. 63-65). Defendants did not sign off on the Johns report.

Based on these factual allegations, plaintiff filed a three-count complaint pursuant to 42 U.S.C. § 1983 (hereinafter "section 1983") on February 8, 2015.

4

The complaint asserts the following three causes of action: Count I, Equal Protection; Count II, Substantive Due Process; and Count III, Procedural Due Process. (Doc. 1). On April 24, 2015, defendants filed a motion to dismiss all counts in plaintiff's complaint (Doc. 11) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On September 1, 2015 we granted defendants' motion to dismiss Count II and Count III. (See Doc. 21). On October 13, 2017 defendants filed a motion for summary judgment (Doc. 53) regarding Count I of the plaintiff's complaint, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, bringing the case to its current posture.

**Jurisdiction**

The court has federal question jurisdiction over this civil rights action brought under section 1983. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. §§ 1343(a)(3), (4) (granting district courts jurisdiction over civil actions brought to redress deprivations of constitutional or statutory rights by way of damages or equitable relief).

**Legal standard**

Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law.'" See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).  A material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Id.

    In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  Int'l. Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990).  The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party.  Anderson, 477 U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law.  Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden then shifts to the nonmoving party, who

must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

As noted above, defendants argue that we should grant summary judgement on the sole remaining count in plaintiff's complaint, equal protecton. Our analysis follows.

**Discussion**

**I Count one- Fourteenth Amendment Equal Protection violation, 42 U.S.C. § 1983**

Plaintiff argues that defendants violated his constitutional rights, alleging unlawful selective and unequal enforcement of local building code rules, under the Equal Protection Clause of the Fourteenth Amendment, which provides as follows:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; *nor deny to any person within its jurisdiction the equal protection of the laws.*

U.S. CONST. amend. XIV, §1 (emphasis added).

Plaintiff seeks to enforce his right to equal protection of the laws using federal law as a vehicle for such enforcement. See 42 U.S.C. § 1983. Section

7

1983 does not, by its own terms, create substantive rights; rather, it provides remedies for deprivations of rights established elsewhere in federal law or in the Constitution. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). Section 1983 states, in pertinent part:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or territory or the District of Columbia, subjects, or causes to be subjected, any citizens of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Accordingly, two elements must be met in order to establish a claim under section 1983: 1) the conduct complained of must have been committed by a person acting under color of state law, Kaucher v. Cty. of Bucks, 455 F.3d 418, 422 (3d Cir. 2006) (citing Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999)), and 2) the conduct must deprive the plaintiff of rights secured under the Constitution or federal law. Id. (citing Am. Mfrs., 526 U.S. at 49-50).[3]

"The [Supreme] Court's equal protection jurisprudence has typically been concerned with governmental classifications that 'affect some groups of citizens differently than others.'" Engquist v. Oregon Dept. of Agr., 553 U.S.591 (2008),

---

[3] Defendants do not dispute that they are state actors for purposes of the motion presently before the court (Doc. 54 ¶10, n.1, Def. Br. in Supp't. of Mot. for Sum. Jgmt.).

8

(citing McGowan v. Maryland, 366 U.S. 420, 425 (1961)). Plaintiff here, however, does not allege membership in a particular group or suspect class. Instead, he advances his equal protection claim under the "class of one" doctrine. Thus, in order for this case to survive the instant motion for summary judgment plaintiff must first establish evidence that he qualifies as a "class of one."

The Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where a plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam) (quoting Sioux City Bridge Co. v. Dakota Cnty., 260 U.S. 441, 445 (1923)). This standard can be broken down into three elements: 1) was plaintiff intentionally treated differently; 2) from others similarly situated; and 3) with no rational basis for the difference in treatment. We will discuss each element separately.

### (A) Intentionally treated differently

Defendants argue that plaintiff has failed to establish evidence from which a reasonable jury could conclude that defendants intentionally treated him differently from other home builders similarly situated because problems arose only when plaintiff and the homeowners deviated from the home plans

9

defendants had approved previously (Doc. 54, Def. Br. in Sup. of Mot. for Sum. Jgmt. at 3).

In order to establish that he was treated differently, plaintiff first relies on his contention that defendants improperly approved[4] building plan drawings, blueprints, and specifications drafted by the original contractor, Sennett Enterprises. Plaintiff admits, however, that defendants reviewed Sennett's plans, and issued the necessary building permits (Doc. 1 ¶ 17). Notwithstanding defendants' red stamp of approval on them, plaintiff's expert witness, David W. Johns, P.E. (hereinafter referred to as "Johns") found fault with the Sennett plans and opined that defendants should not have approved them. (Doc. 62 at 5, 6).

Plaintiff's reliance is misplaced. Despite the same red stamp of approval he now claims was improperly applied, plaintiff, a home builder with more than twenty-six (26) years of experience, used the defendant-approved Sennett plans and building permits to begin construction on the Enders home. (Doc. 1 ¶ 20). The record contains compelling and direct evidence that problems arose in this case only when plaintiff himself made changes to the already-approved plans. (Doc. 5-14, Dep. Charles Kapish at 44-51).

Furthermore, a plaintiff seeking "class of one" status must establish that he has been *intentionally* treated differently from others similarly situated. We hold

---

[4] Defendants' approval of building documents is indicated by a red stamp.

10

that, for purposes of section 1983 equal protection claims, the *intention* at work in the "class of one" legal standard set forth by the Supreme Court must be directed toward the individual seeking "class of one" status. Put another way, there must be a causal connection between a defendant's intention to treat someone differently and a plaintiff claiming he was treated differently by that defendant. No such connection exists here. Whatever intent defendants may have had in affixing their red stamp of approval on the Sennett plans was directed at Sennett, and not at the plaintiff in this case. See generally Village of Willowbrook, 528 U.S. at 564. Plaintiff, therefore, has failed to establish that the defendants intentionally treated him differently.

### (B) From others similarly situated

Defendants argue that plaintiff cannot identify any building contractor similarly situated to him because, unlike any other contractor with whom defendants claim to have dealt, plaintiff retained an attorney who met them at the job site, threatened litigation, and requested a detailed report of all code violations purportedly found in the Enders home. (Doc. 54-1, email exch. between pl. counsel and Def. Jeff Remas, at 70-73).[5]

---

[5] Defendants' exhibits to the motion for summary judgment, including all deposition testimony and email communications, were filed as one (1) docket entry that is one-hundred forty-six (146) pages in length. (See Doc. 54-1). Thus, when citing to Doc. 54-1 we use docket page numbers, rather than the page number of the individual exhibits comprising Doc. 54-1).

"Determining whether an individual is 'similarly situated' to another individual is a case-by-case fact-intensive inquiry." Archer v. York City Sch. Dist., 227 F. Supp. 3d 361, 371 (M.D. Pa. 2016) (quoting Chan v. Cnty. of Lancaster, No. 10–3424, 2011 WL 4478283, at *15 (E.D. Pa. Sept. 26, 2011)) (internal quotation marks omitted). While plaintiff here has alleged that he was similarly situated to other home builders, in the Third Circuit "[p]ersons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" Price v. City of Phila., 239 F. Supp. 3d 876, 899 (2017), (citing Startzell v. City of Phila., 533 F.3d 183, 203 (3d Cir. 2008) (quoting Nordlinger v. Hahn, 505 U.S. 1, 10, (1992))).

We agree with defendants that plaintiff failed to establish that there are other similarly situated building contractors who retained counsel and requested a detailed report rather than simply work with defendants to get the plan changes approved. (Doc. 54-1, Dep. of Jeffrey Remas at 28.) We find that plaintiff is, in fact, unique in this relevant respect. Thus, plaintiff has failed to establish that he was treated differently from other similarly situated contractors under the narrow facts in this case.

### (C) No rational basis for the difference in treatment

Defendants next argue that, hypothetically, if they did treat plaintiff differently from other home builders similarly situated, then there is a rational

basis for the difference in treatment, which is that plaintiff, by and through his attorney, actually requested different treatment and threatened to sue if he didn't get it. (Doc. 54-1, Dep. of Shawn Bolles at 446-461).

Plaintiff attempts to establish that defendants intentionally treated him differently by preparing a comprehensive report on the Enders home, forty-one (41) pages in length, not including photographs. (Doc. 62 at 24). The report describes in great detail thirty-three (33) code violations and requests for additional information, which Johns found to be in excess of the code violations and requests for additional information defendant issued for a number of other similar homes in the area, including the plaintiff's own home. (Doc. 54-1 at 28.)

We find that defendant did treat plaintiff differently in one respect. The different treatment presents in the form of the detailed report requested by plaintiff's counsel under threat of a lawsuit. Defendants argue, and we agree, that the detailed report requested by plaintiff's attorney coupled with a threat of litigation constitutes a rational basis for defendants to actually prepare and deliver the report. We further agree with defendants that plaintiff here was treated differently only upon his own request. (Id.).

"A 'class of one' claim, like any equal protection claim evaluated under rational basis review, cannot succeed if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" Price, 239

13

F. Supp. 3d at 90, citing Heller v. Doe, 509 U.S. 312, 320 (1993) (quoting FCC v. Beach Commc'ns, 508 U.S. 307, 313, (1993)). "If there was a rational basis for the action of the decisionmaker, there is no equal protection class of one violation." Brace v. Cnty. of Luzerne, 873 F. Supp. 2d 616, 630 (M.D. Pa. 2012) (citations omitted), aff'd 535 Fed. App'x. 155 (3d Cir. 2013). Here, plaintiff's "class of one" status, upon which his equal protection claim is based, fails as a matter of law because he cannot establish that the differential treatment he experienced was without rational basis. Thus, we need not reach the section 1983 analysis described above.

**Conclusion**

In the summary judgment motion before us defendants have met their burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex, 477 at 322. Plaintiff has failed to satisfy the standard under which the Supreme Court has recognized successful equal protection claims brought by a "class of one."

Plaintiff has not established evidence that he was somehow singled out, or put upon for not being part of an "in-crowd" in Pittston Township, or any sort of political shenanigans at work here. We find no evidence of the traditional discriminatory indicia commonly characterizing "class of one" equal protection

cases.  See generally Olech, 528 U.S. 562.  There is no genuine issue of material fact for trial in this case.  Thus, defendants' motion for summary judgement will be granted.  An appropriate order follows.

**Date: April 16, 2018**              **s/James M. Munley**
                                      **JUDGE JAMES M. MUNLEY**
                                      **United States District Court**